ASSOCIATED TRUCK LINES, INC., American Trucking Associations, Inc., and Regular Common Carrier Conference of American Trucking Associations, Inc., Plaintiffs,

v.

The UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

National Furniture Traffic Conference Inc., Intervening Defendant.

Civ. A. No. 6070.

United States District Court
W. D. Michigan, S. D.

Sept. 29, 1969.

Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiffs; Conrad A. Bradshaw, Grand Rapids, Mich., Peter T. Beardsley, R. Edwin Brady and Albert B. Rosenbaum, Rice, Carpenter & Carraway, and Richard R. Sigmon, Washington, D. C., of counsel.

Robert A. Hammond, III, Acting Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., John P. Milanowski, Dist. Atty., Grand Rapids, Mich., for the United States.

Robert W. Ginnane, Gen. Counsel, Barry Roberts, I.C.C., Washington, D. C., for ICC.

Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for intervening defendant; Stephen C. Bransdorfer, Grand Rapids, Mich., John F. Bohman, Gardner, Mass., of counsel.

Before McCREE, Circuit Judge, KENT, Chief District Judge, and FOX, District Judge.

FOX, District Judge.

Over a period of many years, Associated Truck Lines, Inc., plaintiff in this case, has had agreements with other carriers for through routes and joint rates for the carrying of general commodities, including furniture, between the Central States area and the Southern States area.[1]

In 1965, Associated published tariff restrictions and a cancellation of the line rate schedule on shipments of furniture. Shippers would then have been charged the higher combination of local rates on through routes. The Commission, after consideration, found the higher combination rates were not just or reasonable.

---

1. Pursuant to 49 U.S.C.A. § 316(c).

No appeal was taken to the courts from the Commission's finding.[2]

Thereafter in 1966, Associated cancelled all through routes and joint tariff arrangements on shipments of furniture between the Central States territory and the Southern States territory.

Intervening defendant, National Furniture Traffic Conference, filed a complaint with the Interstate Commerce Commission challenging the validity of this cancellation. The Hearing Examiner found that the cancellation was not unlawful and recommended that the complaint be dismissed. This recommendation was followed by the Commission, Review Board No. 4, and the Commission, Division 2, acting as an appellate division. A petition for reconsideration by the Commission was denied, however, and a second petition for reconsideration (based on the ground that the issue involved was one of general transportation importance) was granted. The full Commission reversed the Examiner and the Review Board. It found the cancellation was unlawful and thereby restored the through route-joint rate arrangement for shipments of furniture.[3]

The complainant before the Interstate Commerce Commission (National Furniture Traffic Conference, Inc.) maintained before the Commission and before this court that once a motor common carrier of general commodities elects to establish through routes, that carrier is obligated under its certificate of public convenience and necessity to transport all commodities over those routes until the through routes are closed to all commodities.

The plaintiff, Associated, maintains that having *voluntarily* entered into the agreements for through routes and joint rates, it can cancel such agreements under the provisions of Section 216(c), 49 U.S.C.A. § 316(c), as to some commodities, and still maintain through routes and joint rates as to other commodities in the same territory.

Although we were urged by the National Furniture Traffic Conference to find that a carrier might not withdraw joint through rates for general commodities once it has voluntarily established joint through rates for general commodities, we find it unnecessary to decide that issue because the Commission found that Associated's selective cancellation here clearly placed furniture shippers in a disadvantaged position relative to other general commodities, and found such disadvantage to be undue and unreasonable, and hence unlawful under Section 216(b), (c) and (d). American Trucking Associations v. Atchison, T. & S. F. Ry. Co., 387 U.S. 397, 87 S.Ct. 1608, 1621, 18 L.Ed.2d 847, 863 (1967); Greyhound Lines, Inc. v. United States, 268 F.Supp. 746 (N.D.Ill.E.D.1967); Crescent Liquor Co. v. Platt, 148 F. 894, 900–902 (N.D. W.Va.1906).

The Commission found that this selective cancellation of the through routes and joint rates would not only require a furniture shipper "to pay a combination of two local rates (rather than a lower single-factor rate), but would also * * put [the shipper] to the expense (and subject to the attendant delay) of arranging to have a warehouseman or other person at the point of interchange act as his agent in accepting the shipment from Associated and forwarding it on a new bill of lading." 332 ICC 808, 809.

Furthermore, the Commission found that routing shipments and processing damage claims would be further complicated. 332 ICC 812.

The total effect of this action, in many situations, will be to restrict the

---

2. Docket No. M–19650, Furniture Restrictions Between Central and Southern States (not printed), decided September 20, 1965.

3. Docket No. 34815, National Furniture Traffic Conference v. Associated Truck Lines, Inc. December 31, 1968.

movement of furniture to those territories where single line service is available. The segmented and regionalized transportation system which will develop from this tariff rule thus permits Associated selectively to encourage only that traffic which Associated believes more desirable and lucrative.

The Commission then found that such a selective tariff will prejudice furniture shippers relative to other general commodity shippers and was contrary to Associated's duty to observe reasonable practices and its duty not to put any shipper at an undue and unreasonable disadvantage.

In a concurring opinion, Commissioner Tuggle found that Associated's action was unduly discriminatory because it gave an unreasonable economic advantage to furniture shippers who required only Associated's single-line service to reach a market. Those shippers still received this service, while those shippers who had used Associated's interline service to market their goods were faced with higher costs and added shipping complications. The result of this practice would be to force the latter shippers out of the market, thus benefitting their single-line competitors. Furthermore, this tariff rule would prejudice shippers between Southern and Central territories, who no longer have Associated's interline service available, "whenever they compete at points with shippers from other territories who need [Associated's] interline service and have it available." 332 ICC 815, 816. Thus, this tariff rule's failure to provide equal treatment to competing traffic required the finding that this tariff was unlawful.

From an examination of the whole record we find substantial evidence to support this finding of the Commission.

The determination of the Commission is hereby affirmed.