**McLEAN TRUCKING COMPANY, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Manning Motor Express, Inc., Intervenor, Defendant.**

No. C–209–WS–71.

United States District Court, M. D. North Carolina, Winston-Salem Division.

Submitted May 18, 1972.

Decided June 26, 1972.

**350**

Claude M. Hamrick, Hamrick, Doughton & Newton, Winston-Salem, N. C., David G. Macdonald, Francis W. McInerny, John Guandolo and Peter A. Fitzpatrick, Macdonald & McInerny, Washington, D. C., for plaintiff.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., William L. Osteen, U. S. Atty., Greensboro, N. C., for the United States.

Fritz R. Kahn, Gen. Counsel, and Raymond M. Zimmet, Atty., I.C.C., Washington, D. C., for the Interstate Commerce Comm.

Walter Harwood, Nashville, Tenn., and Frazier, Frazier & Mahler, Greensboro, N. C., for intervenor, defendant.

Before CRAVEN, Circuit Judge, and DALTON and McMILLAN, District Judges.

McMILLAN, District Judge:

McLean Trucking Company, of Winston-Salem, North Carolina, is a common carrier by motor truck in interstate commerce, operating under certificates of public convenience and necessity issued by the Interstate Commerce Commission. It hauls freight over the highways in large areas of the country and interchanges with over seven hundred other carriers. Manning Motor Express is a smaller motor carrier. Manning connects with McLean at Louisville, Kentucky, and at Nashville, Tennessee, among other places. Manning is the only interstate carrier which serves Burkeville, Kentucky, where Bob Evans Uniform Company, a sizeable shipper, is located.

Some years ago, McLean entered into an interline agreement for through routes and joint rates with Manning, including Manning's shipments of clothing, with connections between McLean

and Manning at Louisville and at Nashville. Appropriate tariffs were posted showing the joint freight rates over these through routes. These joint rates were established under § 216(c) of the Interstate Commerce Act [49 U.S.C., § 316(c)], which provides in pertinent part that

. "(c) Common carriers of property by motor vehicle *may* establish reasonable through routes and joint rates, charges, and classifications with other such carriers . . ." [Emphasis added].

■ A through rate or joint rate is a combined charge for the entire journey of a shipment of cargo over the lines of several carriers from origin to destination. The cargo originates with one carrier; that carrier issues its bill of lading; and the freight moves under that bill of lading to an interchange where it is transferred to a connecting carrier, which transports the cargo under the same bill of lading to another intermediate carrier or to the ultimate consignee.

Without joint rate agreements, such cargo would have to have a separate bill of lading for each carrier that handled it; the initiating carrier would have to deliver the cargo to the connecting carrier as the "agent" of the shipper; and each bill of lading would carry its own separate charge for the services of the carrier that issued it. Each carrier in that event would be thought of as a "local" carrier and the freight rates for each separate line would be "local" rates.

Generally speaking, joint rates for a shipment are cheaper than the sum of the local rates.

After McLean had been hauling Manning's freight for a while, McLean filed a proposed new set of tariffs, the effect of which would be to eliminate Manning from McLean's joint or through rate agreements at the interchanges in question, to cancel the joint rate tariffs, and to leave the affected shippers subject to the higher local rate tariffs.

The economic effect of the proposed new tariffs would be to increase the freight cost to those shippers, now served by Manning, whose normal shipping needs require connecting service by McLean.

The Interstate Commerce Commission received the proposed tariffs and considered them under § 216(g) of the Interstate Commerce Commission Act [49 U.S.C., § 316(g)], which provides in pertinent part that:

"At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable."

On February 4, 1971, the Commission, basing its decision squarely upon § 216(g), denied McLean's proposal to terminate its joint rate agreement with Manning. Request for reconsideration was denied on July 27, 1971, and McLean then on September 7, 1971 filed this action, seeking to set aside the Commission's decision and the Commission's order requiring McLean to cancel its new tariffs. Pending the litigation McLean has continued to interchange freight with Manning under the original joint rates.

McLean's first contention is that since under § 216(c) of the Act a motor carrier could not be compelled to *enter into* joint rate agreements, it may not now be compelled to *continue* such agreements. McLean points out that the Commission has frequently sought from Congress, but has always been denied, the authority to compel carriers to enter into joint rate agreements; and they cite several cases in which the Commission recognized that it did not have authority to require carriers to establish such joint rate and through rate arrangements. For example, see East South Joint Rates and Routes, Cancellation, 44 M.C.C. 747 (1945).

In Restrictions, Riss & Co., and Eliminations, Hi-Way Motor, 46 M.C.C. 290, 292–93 (1946), the Commission approved the voluntary cancellation of a joint rate

arrangement, and discussed its authority under § 216(c) as follows:

"Under section 216(c) of the act, we may not require motor common carriers of property to establish through routes and joint rates. Not having the right to require their establishment in the first instance, we have no power to require the continued maintenance of through routes and joint rates voluntarily established."

There is thus some background of legislative denial of the power to compel establishment of joint rates and an historical recognition in ICC opinions of lack of power to require continuation of such rates.

The Commission concedes these items of prior history (including its own apparently contrary decision in Neuendorf Transportation Company, ICC No. 35284, January 29, 1971), but takes the view that its previous tolerance of the limitation on its authority was incorrect, and that it has seen the error of its ways, and now seeks to act and assert its duty under § 216(g) to pass upon whether a *discontinuance* of a joint rate agreement is "just and reasonable." On this point the Commission cites National Furniture Conf. v. Assoc. Truck, 332 I. C.C. 802 (1968), aff'd. sub nom., Associated Truck Lines v. United States, 304 F.Supp. 1094 (W.D.Mich., 1969), aff'd. per curiam, 397 U.S. 42, 90 S.Ct. 815, 25 L.Ed.2d 41 (1970). In that case the Commission, under the authority of § 216(g), denied a motor carrier the privilege of cancelling joint rates as to a particular commodity (furniture) while continuing joint rates as to other commodities over the same line. Although *National Furniture* did not pretend to assert jurisdiction to *establish* joint rates, it would clearly assert jurisdiction to prevent the selective *cancellation* of joint rates as to particular commodities which would adversely affect the public interest.

In its opening brief as plaintiff, McLean does not mention § 216(g). McLean confines its argument to considerations affecting § 216(c); it argues that since the Commission has no power to require establishment of joint rates, it has no power to require their continuation, and in argument counsel for McLean suggest that § 216(c) is a *bar* to any Commission control over discontinuance of joint rates.

McLean's conclusion, though not required, is tenable, so long as § 216(g) is ignored.

However, § 216(g) will not be ignored. It says in plain English that when a carrier proposes to make a change in a fare or in a "rule, regulation or practice," the burden of proof is upon the carrier to show that "the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable."

■ Although McLean apparently argues that since it is proposing to eliminate its joint rates with Manning, it is not engaging in a "change in a rate" within the meaning of § 216(g), we are unable to agree; under § 216(g), "change" clearly encompasses the proposed new tariffs. The proposals to eliminate the joint rates with Manning are proposals: (a) to change the rates from low combined rates to higher local rates; (b) to require the issuance of more than one bill of lading; (c) to make it necessary for shippers whose products may have to be interchanged to constitute the initiating carrier or someone else as their "agent" for the purpose of transferring freight to the connecting carrier; and (d) effectively to increase the cost and inconvenience of shipping. Although the *form* of the change is simply the posting of a set of rates, the *substance* of the change is substantial from an economic and administrative point of view.

McLean has offered no proof to sustain its burden of proof under § 216(g), but relies essentially upon its theoretical assertion that what it can not be required to *commence,* it can not be required to *continue.*

■ We are unable to agree with McLean's position. Section 216(g) re-

quires the Commission to exercise its public duty in passing upon changes in rates. Greyhound Lines, Inc. v. United States, 268 F.Supp. 746, 748–749 (N.D. Ill., 1967), aff'd per curiam, 389 U.S. 216, 88 S.Ct. 416, 19 L.Ed.2d 422 (1967); Associated Truck Lines, Inc. v. United States, 304 F.Supp. 1094, 1095–1096 (W.D.Mich., 1969), aff'd per curiam, 397 U.S. 42, 90 S.Ct. 815, 25 L.Ed.2d 41 (1970). Since McLean has offered no evidence as to its own costs or any detriment to it if the requested change is denied, and has offered no proof as to the justness and reasonableness of the new tariffs from the standpoint of the shipping public, it is obvious that McLean has not sustained its burden of proof under § 216(g).

It may be sufficient for decision of the case merely to find that McLean has failed to sustain its burden of proof. However, it is apparent that the factual probabilities are contrary to McLean's position. If a joint rate can be terminated at will as to Manning, a small shipper, it can be terminated at will as to others, big or little. A composite effect of ending joint rates is to increase the cost of hauling freight. Interlining is necessary for small, short-haul carriers. McLean presumably had a business purpose in mind when it established the original joint rate with Manning (and with twenty-four other carriers at the Louisville interchange and thirty-seven other carriers at the Nashville interchange). Establishment of these joint rates has served its purpose as far as McLean is concerned. If the large long-haul carriers which have collected a stable of small connecting short-haul carriers are allowed to discontinue *selected* joint rates without Interstate Commerce Commission approval, they can exercise substantial economic pressure on the small carriers and on shippers.

The duty of the Commission is to safeguard public convenience and necessity. They are not bound slavishly to follow previous decisions which may have been erroneous or have outlived their time. Public agencies have a duty to re-examine old practices and change them when necessary to serve their statutory purposes. The Commission's efforts to obtain statutory authority to require establishment of joint fare arrangements (an eminently sensible effort) can not be read as a concession that they lack authority under § 216(g) to require that *changes* in joint rates be "just and reasonable." The *permission* to *establish* under § 216(c) can not be distorted into a *prohibition* of the power to regulate under § 216(g).

## CONCLUSION

The Commission correctly determined that the carrier had not sustained its burden under § 216(g) to prove that the proposed new tariffs and procedures were "just and reasonable," and correctly denied the carrier authority to discontinue the joint rates with Manning Motor Express. The relief sought by plaintiff, McLean Trucking Company, will be denied. The parties are directed to submit an appropriate judgment within twenty (20) days after the entry of this opinion.