**T.I.M.E.–DC, INC., Plaintiff,**

v.

**The UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and **Georgia Chapter of the Local and Short Haul Carriers National Conference of the American Trucking Associations, Inc., et al., Intervening Defendants.**

**No. CA–5–942.**

United States District Court, N. D. Texas, Lubbock Division.

July 3, 1972.

New Trial Denied Aug. 4, 1972.

Robert M. Hill, J., filed dissenting opinion.

Frank M. Garrison, Lubbock, Tex., Bryce Rea, Jr., of Rea, Cross & Knebel, Washington, D. C., for plaintiff.

Stephen Rubin, John H. D. Wigger, Department of Justice, Washington, D. C., Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Willis T. Taylor, Asst. U. S. Atty., Lubbock, Tex., Hanford O'Hara, Fritz R. Kahn, Washington, D. C., for ICC.

Paul P. Watkins, Atlanta, Ga., for intervening defendants Georgia-Alabama

Textile Traffic Assn., Inc., and Carpet and Rug Institute.

Archie B. Culbreth, Atlanta, Ga., for intervening defendant Georgia Chapter of Local and Short Haul Carriers National Conference of American Trucking Associations, Inc.

Before THORNBERRY, Circuit Judge, and WOODWARD and HILL, District Judges.

WOODWARD, District Judge:

Plaintiff T.I.M.E.–DC, Inc. (TIME), is a motor carrier providing transportation of property and merchandise throughout the southern and southeastern United States under certificates of authority from the Interstate Commerce Commission (ICC). Some years ago, TIME, as an additional customer service, voluntarily entered into and published through-route and joint-rate agreements with other motor carriers in order to provide more effective and less expensive service to shippers not located along a major freight line. Under some of these arrangements, TIME would act as a bridge carrier between a line serving the point of origin and a line serving the point of destination; while a different arrangement was brought into play where TIME itself served one of the points but not the other. In both types of agreement, the shipper was given the benefit of a joint rate which was appreciably less than the total of each carrier's rate for the individual segments of the trip.

In 1970, schedules were filed by TIME with the Southern Motor Carriers Rate Conference, Paragraph A, Item 195, in its South Routing Guide, to become effective July 13, 1970, which would in effect have canceled the through routes and joint rates in all instances where TIME was serving as a bridge carrier. The effect of this change would be that if TIME were used as an intermediate or bridge carrier, the shipper would be forced to pay the higher combination rate rather than the present through rate. The proposed changes were not in any way to affect the through route and joint rate arrangements in the situations in which TIME served either the point of origin or the point of destination.

On February 11, 1971, the Interstate Commerce Commission, in a proceeding styled Investigation and Suspension Docket No. M–24087, Routing Provisions, T.I.M.E.–DC, Inc., ordered TIME to cancel the proposed new schedules, in effect forcing them to maintain their through routes and joint rates as previously established. TIME exhausted its administrative remedies before the Interstate Commerce Commission, and relief was finally denied it by that body.

TIME then brought the complaint in this court, requesting that a three-judge panel be convened to review the order of the ICC, and praying that the Court enter its judgment setting aside and permanently enjoining the ICC from enforcement of its cancellation order. Plaintiff's prayer for a temporary restraining order pending the final outcome of this litigation has been granted.

By permission of the Court, intervening defendants have joined in opposing the relief asked for by plaintiff, the intervenors being shippers of merchandise on the routes affected, as well as local and short haul carriers affected thereby.

Jurisdiction is based on 28 U.S.C. §§ 1336, 1398, 2284, and 2321 through 2325. The case was heard before a three-judge court on the 30th day of March, 1972, with representatives of all parties and their counsel present.

The positions of the parties are as follows:

Plaintiff contends that Section 216 of the Interstate Commerce Act, 49 U.S.C. § 316, does not give the ICC authority to compel the establishment of through routes and joint rates by common carriers of property by motor vehicle, although this authority is given to the ICC with respect to common carriers of passengers by motor vehicle and other common carriers. Defendants agree that Congress has not vested in the ICC

the authority to compel the original establishment of any such through routes and joint rates, and counsel have all indicated that Congress has on one or more occasions refused to grant such authority when it was suggested that the Act be amended accordingly. Plaintiff further contends that the order of the ICC was improper in charging plaintiff with the burden of showing that the cancellation of the through routes and joint rates was just and reasonable.

Defendants and interveners, while admitting that the establishment of such through routes and joint rates could not have been compelled originally by the ICC, urged that once such arrangements were established, there could be no change or cancellation thereof until and unless the carrier proved to the Commission's satisfaction the reasonableness of such change or cancellation, in accordance with the provisions of 49 U.S.C. 316(g). Since it is undisputed that plaintiff failed to sustain that burden of proof before the Commission, defendants contend that the ICC exercised its proper authority in ordering the continuation of the through routes and joint rates sought to be canceled by TIME.

In argument of counsel, it was pointed out that there would be no physical differences in the movement of goods either before or after the cancellation of the through routes and joint rates, and that the goods could and would move via the same carriers and over the same routes should the shipper desire to do so. The only apparent change would be that instead of getting the benefit of a joint rate, the shippers, in order to ship their goods on the same route as before, would be required to pay the higher combination rate of all the carriers involved.

The issue, therefore, is whether a carrier, having once voluntarily entered into through routes and joint rates with other carriers, and having filed its schedule of rates and charges, can subsequently cancel such through routes and joint rates without showing the proposed change to be just and reasonable. To put it another way, if a carrier under such conditions does attempt to cancel its through routes and joint rates, can the ICC prevent such cancellation absent a showing from the carrier that the change would be just and reasonable?

The earlier decisions of the ICC recognized that the Commission had no authority to compel the establishment of through routes and joint rates, and these decisions also took the position that this lack of original authority would prevent the ICC from intervening in the cancellation of an arrangement which was purely voluntary in the first place. East South Joint Rates and Routes, Cancellation, 44 M.C.C. 747 (1945); Southeast Shippers Association, Inc. v. Akers Motor Lines, Inc., 54 M.C.C. 771 (1953).

Later holdings of the Interstate Commerce Commission have indicated a trend away from this position. National Furniture Traffic Conference, Inc., v. Associated Truck Lines, Inc., 332 I.C.C. 802 (1968).

There is no need, however, to consider whether a carrier could cancel all his joint rates without ICC approval because here the carrier has chosen to cancel only selective joint rates. In Greyhound Lines, Inc. v. United States, 268 F.Supp. 746 (N.D.Ill.1967), affirmed 389 U.S. 216, 88 S.Ct. 416, 19 L.Ed.2d 422 (1967), the Court indicated that although a voluntary establishment of a ticket-honoring arrangement between two carriers could not have been compelled originally, once such an arrangement was voluntarily established "the Commission had the power to prevent Greyhound from withdrawing from the optional honoring agreement with M. K. & O., notwithstanding the fact that this arrangement was initially voluntarily established by the two carriers."

The Court further went on to say:

"There would be little purpose in requiring the filing of all changes in the tariff and the grant of a broad power to investigate such changes un-

der Section 216(g) if, in the end, the Commission did not have the power to prevent the change from becoming effective. Indeed, except where the statute includes an express prohibition relating to certain traffic arrangements, the authority of the Commission to prevent changes in tariffs pursuant to Section 216(g) has consistently been recognized."

The above case has parallels to the one now before us in that the *Greyhound* arrangement was voluntarily established in the first place and duly filed in the tariff schedules. Further, the voluntary ticket-honoring arrangement was between Greyhound and M. K. & O. as well as other carriers, and Greyhound sought to cancel only the arrangement with M. K. & O. In the case at hand, TIME has various types of through-route and joint-rate arrangements but is seeking to cancel only those wherein it acts as bridge carrier. *Greyhound* seems to be closely in point.

Other support for the position of the ICC can be found in Associated Truck Lines, Inc. v. United States, 304 F.Supp. 1094 (W.D.Mich.1969), affirmed, 397 U. S. 42, 90 S.Ct. 815, 25 L.Ed.2d 41 (1970). There the carrier sought to cancel its through routes and joint rates on one commodity only—furniture— leaving their arrangements in effect as to other merchandise and commodities. The Commission found this to be dis- criminatory and refused to permit the cancellation as to furniture alone; the Court agreed. The discrimination pointed out in *Associated* can be equated with the selective cancellation of through routes and joint rates in this case, in that TIME seeks cancellation of only a portion of its through routes and joint rates, leaving in effect those through routes and joint rates in which TIME is the terminating or originating carrier.

It seems clear that the net result of the cancellation proposed by TIME would indeed be a change of rates, therefore subject to regulation by the Commission under 316(g).

Nevertheless, TIME says that the ICC does not have the authority to compel it to carry the burden of proof to show that the change is just and reasonable. They argue that 316(g), wherein the burden of proof is placed on the carrier, does not apply to the present factual situation in that 316(g) has as its substantive authority 316(e), which applies only to those through routes and joint rates applicable to the transportation of passengers by common carriers by motor vehicle, and not to merchandise.

 This Court does not read 316(g) in this context. Section 316(g) does not in any respect limit its application to passengers but on the other hand very specifically states that it also applies to property.[1] The clause "as

1. 49 U.S.C. § 316(g): "Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, charge, or classification for the transportation of passengers *or property* by a common carrier or carriers by motor vehicle, or by any such carrier or carriers in conjunction with a common carrier or carriers by railroad and/or express, and/or water in interstate or foreign commerce, or any rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder, the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative at once and, if it so orders, without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, or charge, or such rule, regulation, or practice, and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, or charge, or such rule, regulation, or practice, but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after hearing, whether completed before or after the rate, fare, charge, classification, rule, regulation, or practice goes into effect, the Commission may make such order

would be proper in a proceeding instituted after it had become effective" does not appear to restrict the authority of the Interstate Commerce Commission in this respect to the authority granted in 316(e). In fact, 316(g) specifically mentions motor vehicle carriers for the transportation of passengers or property.

TIME, having established various through routes and joint rates, now desires to "pick and choose" by canceling those through routes and joint rates wherein TIME is a bridge carrier, leaving in effect those wherein it is the originating or terminating carrier. This is a selective cancellation of through routes and joint rates which is discriminatory and is the type of discrimination which was condemned and prohibited in *Greyhound* and *Associated, supra.* Therefore, the Interstate Commerce Commission was correct in prohibiting the selective cancellation of the through routes and joint rates by TIME, and in the absence of a showing by TIME that such cancellations were just and reasonable, the Interstate Commerce Commission should have, as it did, prohibited such cancellations.

It is therefore ordered that the order of the Interstate Commerce Commission in question should be and the same is hereby upheld and the injunction heretofore entered by this Court suspending the operation of the Interstate Commerce Commission's order is hereby dissolved.

ROBERT M. HILL, District Judge (dissenting).

I respectfully dissent.

The majority states that it has found no prior decisions quite in point. I feel that the issue in this case is controlled by the decision of the Interstate Commerce Commission (hereinafter I.C.C. or Commission) in East South Joint Rates and Routes, Cancellation, 54 M.C.C. 747 (1945). In that case Fredrickson, a motor common carrier of general commodities, entered into joint rates with other carriers which applied whether Fredrickson was the originating, bridge or delivering carrier. Fredrickson then proposed to withdraw from the joint rates and through routes in those cases in which it was the bridge carrier and continue the joint rates in cases where it was the originating or delivering carrier. The Commission sustained Fredrickson's right to withdraw from the routes, holding that because the provisions of § 216(c) were permissive, the Commission could not prevent the carriers who established through routes from closing them.

The intervenors in this case complain that T.I.M.E.'s withdrawal would result in higher rates and other inconveniences. Similar contentions were asserted by shippers in *East South.* Nevertheless, the Commission held that Fredrickson's general withdrawal was not discriminatory, though it indicated that a selective withdrawal might be discriminatory. In this case, of course, T.I.M.E. is withdrawing from *all* routes in which it is bridge carrier, not just some of them. Thus its withdrawal is general, not selective.

The majority maintains that the cancellation of all through routes in which T.I.M.E. is the bridge carrier is a selective cancellation. They rely on two cases, Associated Truck Lines, Inc. v. United States, 304 F.Supp. 1094 (W.D.Mich.

with reference thereto as would be proper in a proceeding instituted after it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, or charge, or classification, rule, regulation, or practice, shall go into effect at the end of such period: *Provided,* That this subsection shall not apply to any initial schedule or schedules filed on or before July 31,

1938, by any such carrier in bona fide operation on October 1, 1935. At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable." (Emphasis added.)

1969), and Greyhound Lines, Inc. v. United States, 268 F.Supp. 746 (N.D.Ill. 1967) for this proposition. I feel these cases are distinguishable.

In *Associated* plaintiff trucking line had maintained agreements with other carriers for through routes and joint rates for the carrying of general commodities. Associated then cancelled all through routes and joint rates on shipments of furniture. The I.C.C. found the cancellation unlawful. On appeal, the decision was affirmed.

The carrier in *Associated* did not cancel through route agreements previously established; it merely refused to transport *furniture* over those routes. Recognizing this, the court relied in part on § 216(d), which proscribes "unjust discrimination . . . or undue or unreasonable prejudice or disadvantage . . . ." As this court reads *Associated*, it was the carrier's attempt to withdraw from through routes as to a particular commodity while maintaining the routes for other commodities that resulted in discrimination.

In *Greyhound* the plaintiff had maintained optional ticket honoring provisions with several bus lines. Greyhound sought leave to cancel the arrangement with one bus line, Missouri, Kansas & Oklahoma (M K & O), after the agreement had been in effect 26 years. The I.C.C. denied leave for cancellation and the court affirmed.

That decision is distinguishable from this case in several respects. First, discrimination against one particular carrier was present. The court noted that evidence presented before the I.C.C. indicated that Greyhound had attempted to eliminate the competition of M K & O for several years by a variety of methods. These included attempts to purchase M K & O stock and implementation of scheduling changes which hampered M K & O operations. Greyhound's discontinuance of ticket honoring appeared to be a further attempt to eliminate this competition.

Further, *Greyhound* concerned passenger, rather than property, carriers, and thus involved application of § 216(a), rather than § 216(c), of the Interstate Commerce Act. Section 216(a) is a mandatory statute, providing "It *shall* be the duty of every common carrier of passengers by motor vehicle to establish reasonable through rates . . . ." (emphasis added). Section 216(c), on the other hand, is permissive, providing, "Common carriers of property by motor vehicle *may* establish . . . ." (emphasis added). The court noted these differences and characterized cases based on interpretation of § 216(c) as inapplicable.[1]

The Interstate Commerce Act does not grant the Commission jurisdiction to control establishment of through routes by motor common carriers of property. Where such through routes have been voluntarily established, the Commission has taken the position that it lacks jurisdiction to prevent their cancellation. East South Joint Rates and Routes, Cancellation, 44 M.C.C. 747 (1945); Southeast Shippers Association, Inc. v. Akers Motor Lines, Inc., 54 M.C.C. 771 (1952). In order to remedy this lack of authority, the Commission has sought passage of legislation granting it jurisdiction to compel establishment and maintenance of through routes of such carriers. Despite these facts, the Commission now argues that it has the power to prevent cancellation of through

1. The court in *Greyhound* did mention one case involving interpretation of § 216 (c). In Washington, D.C. Store-Door Delivery, 27 I.C.C. 347 (1913), railroads attempted to discontinue free delivery of certain commodities in Washington, D.C., while continuing free delivery in Baltimore, Maryland. The Commission refused to permit withdrawal of Washington free delivery, holding that the proposal was prejudicial to that city. It permitted the railroad to discontinue free delivery in Washington only as to those classes of commodities for which the railroads did not provide free delivery in Baltimore. Thus the gravaman of the decision in *Store-Door* was discrimination.

routes. I disagree with this contention and feel the Commission should seek expansion of its jurisdiction from Congress, not the courts.

The issue of the burden of proof in this case was briefed and argued by the parties. The majority impliedly holds that the cancellation of through routes and joint rates is a change of rates which the Commission has authority to regulate, and that the burden of proof would therefore be placed on the carrier to show the reasonableness of any change. I feel the provisions of § 216(g) are not applicable when a carrier totally withdraws from through routes, and that the carrier has no burden of proof where the withdrawal is not discriminatory.

#### Opinion Denying New Trial

PER CURIAM:

The court has received and considered the motion for new trial filed on behalf of the plaintiff in the above entitled and numbered cause.

In addition to those authorities cited in the court's opinion and judgment of July 3, 1972, two cases have been determined in three-judge court actions which are in agreement with the conclusions reached by this court in its original opinion and judgment. McLean Trucking Co. v. United States, 346 F. Supp. 349 (M.D.N.C.19——), and Smith's Transfer Corp. v. United States, Civil No. 71–C–44–H, U.S.D.C., W.D.Va. In addition to the grounds which were set forth and discussed in the majority opinion of this court, the majority here concurs in the views expressed in these cases and would cite them as additional authority for the conclusions reached in the judgment entered.

It is therefore the order of this court that the motion for new trial filed by the plaintiff in this cause be and the same is hereby denied.

ROBERT M. HILL, District Judge.

For the reasons set forth in my dissenting opinion to the court's opinion and judgment of July 3, 1972, I respectfully dissent to the order above entered denying plaintiff's motion for a new trial.