**EASTERN CENTRAL MOTOR CARRIERS ASSOCIATION, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 77–1626.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1977.

Decided Feb. 21, 1978.

Bryce Rea, Jr., Washington, D. C. (John R. Bagileo, David H. Coburn, John S. Fessenden, Michael Gallagher, Robert G. Gawley, William E. Kenworthy, William W. Pugh, Washington, D. C., J. Alan Royal, Norman Powell, Joseph Wolonsky, Chicago, Ill., Rea, Cross & Auchincloss, Washington, D. C., on brief) for petitioners.

David Popowski, Atty., Interstate Commerce Commission, Washington, D. C. (John Shenefield, Asst. Atty. Gen., Robert B. Nicholson, Asst. Chief, App. Section, Antitrust Div., Robert Lewis Thompson, Atty., Dept. of Justice, Mark L. Evans, Gen. Counsel and Henri F. Rush, Associate Gen. Counsel, Washington, D. C., on brief) for respondent.

Steven J. Kalish, Washington, D. C. (Daniel J. Sweeney, Belnap, McCarthy, Spencer, Sweeney & Harkaway, Chicago, Ill., on brief), for intervenor-respondents.

Robert E. Born, Born, May, Kohlman & Sawyer, Atlanta, Ga., on brief, for intervenor Southern Motor Carriers Rate Conference, Inc.

Before BRYAN, Senior Circuit Judge, WINTER and RUSSELL, Circuit Judges.

BRYAN, Senior Circuit Judge:

Associations and tariff bureaus of interstate motor common carriers of property, petitioning for review, question the authority of the Interstate Commerce Commission to order that interline carriers' tariffs shall not limit through routes and joint class rates to less than three carriers, rather than to two as the carriers had done of their own accord. 28 U.S.C. § 2321(a); §§ 2342(5)–2348; *Ex Parte No. MC77 (Sub. No. 1),* 126 M.C.C. 303, 326 (January 19, 1977); 49 CFR 1307.27(k)(1).

The challenge is postulated on Section 216(c) of the Interstate Commerce Act, 49 U.S.C. § 316(c). It permits *carriers* to "establish reasonable through routes and joint rates . . . with other such carriers . . . .", but gives no corresponding permission to the Commission. Hence, petitioners arraign the order as an unwarranted pretension by the ICC to undelegated jurisdiction. Besides their own reading of the terms and intendment of the statute, petitioners suggest, too, an implied joinder of the Commission in their view, by endeavoring, from time to time, though unsuccessfully, to have the Congress amend so as to confer this power upon it.

Answering, the Commission, with the intervenor-respondents, pleads, by way of confession and avoidance, that while not

itself possessed of the power, the disputed order is not an arrogation of petitioners' prerogative, but rather the exertion in the public interest of its bounden oversight of the carriers in the exercise of their privilege.

Resolution of this controversy calls for a decision of law as well as an appraisal of the evidence justifying the application of this ruling. In both of these aspects our study confirms the soundness of the order now in review.

As the Commission urges, it has not decreed through routes or joint rates; it has only obeyed the fiat of the Congress that it insist that those established by the carriers be reasonable, as witness the Act in Section 204(a)(1), 49 U.S.C. § 304(a)(1):

> "(a) It shall be the duty of the Commission—
>
> (1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may *establish reasonable requirements with respect to continuous and adequate service,* . . ." (Accent added.)

Regarding the Commission's sphere vis-a-vis the exclusivity of the carriers' power over routes and rates, a three-judge court in *McLean Trucking Co. v. United States,* 346 F.Supp. 349 (M.D.N.C.1972) aff. 409 U.S. 1121, 93 S.Ct. 937, 35 L.Ed.2d 253 (1973), distinguished explicitly and precisely the power of the carriers under Section 216(c) of the Act and the Commission's right of regulation by virtue of Section 304(a)(1). The Court accented, that the Commission's function was to evaluate the routes and rates with an eye to "public convenience and necessity".*

█ The Commission has found that its instant restraint of the carrier's utilization of their powers, to originate routes and rates, is necessary to assure adequate availability of transportation service. This re-

sult was markedly dwelt upon in its last report, January 19, 1977, 126 MCC 322, footnote 12:

> "The position of the Commission in this respect arises from the showing concerning the problems of shippers located in rural areas, particularly when traffic is destined to other rural points, and from the showing concerning the trend toward compartmentalization of carrier operations. We would further observe in this respect, however, that while it is not a matter capable of objective proof, it is possible that in most instances traffic could move between virtually all points in the continental United States in operations involving interlining of no more than three common carriers. Thus, to the extent an interlining carrier maintains restrictions in its tariff limiting joint rate applicability to operations involving less carriers it is, in a sense, limiting a shipper's commercial activities in accordance with the territorial limits of its certificates and those of one other carrier, rather than allowing activities bounded only by the Nation's borders."

In fine, we see in the reasons and results of the assailed order, as scrupulously expounded by the Commission throughout, no mistake of law or infirmity in evidential backing. "We do not weigh the evidence introduced before the Commission; we do not inquire into the wisdom of the regulations that the Commission promulgates, and we inquire into the soundness of the reasoning by which the Commission reaches its conclusions only to ascertain that the latter are rationally supported." *United States v. Allegheny-Ludlum Steel,* 406 U.S. 742 at 749, 92 S.Ct. 1941 at 1946, 32 L.Ed.2d 453 (1972).

In this area of consideration a multiple-judge court, in *C–Line, et al. v. United States,* 376 F.Supp. 1043, 1048 (D.C.R.I. 1974), reiterated with due authentication:

> "The advocacy of legislation by an administrative agency—and even the assertion of the need for it to accomplish a desired result—is an unsure and unreliable, and not a highly desirable, guide to statutory construction. . . ."

---

* Incidentally, anent any adverse intimation from the Commission's nonsuccess in having Congress amend, the Court observed in *American Trucking Associations v. A.T. & S.F.R. Co.,* 387 U.S. 397, 418, 87 S.Ct. 1608, 1619, 18 L.Ed.2d 847 (1967):

"It is well settled that the scope of judicial review of an order of the Commission is limited. Such an order will be sustained if it is within the Commission's power, and its judgment rational and based upon substantial evidence."

Again, in *Armored Carrier Corporation v. United States,* 260 F.Supp. 612, 614 (E.D.N.Y.1966), aff'd, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524, reh. denied, 388 U.S. 924, 87 S.Ct. 2106, 18 L.Ed.2d 1378, the Court laid down this prescript:

"Absent pertinent authority, and since the Commission is the expert in the field of transportation, *East Texas Motor Freight Lines, Inc. v. Frozen Food Express,* 1956, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917, its views should be entitled to special consideration."

Dominant throughout our resolution upholding the Commission, is the thesis of the National Transportation Policy, 49 U.S.C. § 1:

"It is hereby declared to be the national transportation policy of the Congress . . . to promote . . . adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; . . . All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy."

Overall, petitioners contend too, that the Commission precedent to its order did not comply with the demands of the Administrative Procedure Act, 5 U.S.C. § 553 et seq. in rulemaking. To the contrary, we see it dutifully attentive to the requisites of the statute.

Finally, in our judgment the order in suit is valid for the reasons set forth *infra* and in the Report of the Commission on Further Consideration, *Ex Parte No. MC–77 (Sub-No. 1) Restrictions on Service by Motor Common Carriers* (January 19, 1977).

Affirmed.