343 F.2d 583
 CITY OF LAWRENCE, MASSACHUSETTS, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent.
CITY OF NEW HAVEN, CONNECTICUT, Greater New Haven Chamber of Commerce, Petitioners,
v.
CIVIL AERONAUTICS BOARD, Respondent.
TOWN OF STRATFORD, CONNECTICUT, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent.
 No. 6360.
 No. 6377.
 No. 6382.
 United States Court of Appeals First Circuit.
 Heard January 5, 1965.
 Decided April 9, 1965.
 
 Andrew A. Caffrey, Lawrence, Mass., for petitioner in Case No. 6360.
 Robert M. Beckman, Washington, D. C., with whom William C. Burt, Washington, D. C., Ralph I. Brown, New Haven, Conn., and Koteen & Burt, Washington, D. C., were on brief, for petitioners in Case No. 6377.
 Howard S. Boros, Washington, D. C., with whom Raymond E. Baldwin, Jr., and Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., were on brief, for petitioner in Case No. 6382.
 Arthur R. Schor, Asst. Chief, Litigation and Legislation, with whom William H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum and Barry J. Waldman, Attys., Dept. of Justice, John H. Wanner, Gen. Counsel, C. A. B., Joseph B. Goldman, Deputy Gen. Counsel, O. D. Ozment, Associate Gen. Counsel, Litigation and Legislation, and John M. Stuhldreher, Atty., C. A. B., were on brief, for respondent.
 
 
 1
 Henry E. Foley, Loyd M. Starrett, Edward J. Cutter, and Foley, Hoag & Eliot, Boston, Mass., on brief for Northeast Airlines, Inc., amicus curiae in Case No. 6360.
 
 
 2
 E. Smythe Gambrell, Harold L. Russell, James H. Bratton, Jr., Alvin Green, and Gambrell, Harlan, Russell & Moye, Atlanta, Ga., on brief of Eastern Air Lines, Inc., amicus curiae in Case Nos. 6377 and 6382.
 
 
 3
 Edwin I. Colodny, Washington, D. C., and Hale, Russell & Stentzel, New York City, on brief of Allegheny Airlines, Inc., amicus curiae in Case Nos. 6377 and 6382.
 
 
 4
 Before ALDRICH, Chief Judge, and SWEENEY and WYZANSKI, District Judges.
 
 
 5
 SWEENEY, District Judge.
 
 
 6
 These are petitions for review of an order of the Civil Aeronautics Board (hereinafter, the Board) which, insofar as relevant, 1) permitted Northeast Airlines, Inc. (hereinafter, Northeast) to delete service to Lawrence, Massachusetts; 2) granted a petition of Eastern Airlines, Inc. (hereinafter, Eastern) to delete New Haven, Connecticut; and 3) consolidated service by Allegheny Airlines, Inc. (hereinafter, Allegheny) to New Haven and Bridgeport, at the Bridgeport airport. The petitioners are the Cities of Lawrence and New Haven, the Greater New Haven Chamber of Commerce and the Town of Stratford wherein lies the Bridgeport Municipal Airport.
 
 
 7
 By an order dated March 23, 1962 the Board instituted the New England Regional Airport Investigation "to review the feasibility of implementing a regional airport program in the New England Area," Order E-18146. This proceeding was consolidated with the application of Eastern to delete New Haven and a petition of Northeast to delete several points not involved in these appeals.
 
 
 8
 The question, as defined by the Examiner, was "whether existing air carrier service * * * at the points in issue[1] should be suspended, deleted, or consolidated with other services provided through adjacent points." While he discerned some "guidelines for investigation and decision" in area airport cases decided by the Board — airport accessibility; historic traffic experience; frequency of service and direction of traffic; airport capabilities; and the cost to the communities, the carriers and the general public — he also noted the Board's usual approach that "the issues here involved are of such a nature that they must be decided by the delicate process of weighing and balancing numerous and often conflicting considerations, which is the process common to virtually all of the questions of public convenience and necessity."
 
 
 9
 The Examiner concluded, insofar as here relevant, that Northeast's service should be deleted from Lawrence, and Eastern's service, from New Haven, and that Allegheny's service to New Haven and Bridgeport should be consolidated and provided through the Bridgeport Municipal Airport. The Board affirmed by a 3-2 decision and, in large part, adopted, as its own, the findings of the Examiner.
 
 
 Lawrence, Massachusetts
 
 
 10
 The Board found in the case of Lawrence, Massachusetts, that while the City and area surrounding it generate a substantial quantity of traffic, both passenger and freight, for various reasons nearly all Lawrence area travellers and freight use Logan Airport at Boston. Service at Lawrence was disrupted entirely during an airport improvement program between mid 1960 and mid 1961; and, thereafter, Northeast provided relatively minimal service at Lawrence. But the key problem, the Board found, is the proximity of Lawrence to Boston and the ready accessibility of Logan Airport by excellent super highways. Even when Northeast provided two daily round-trip flights to New York, Lawrence only originated 4.2 passengers per day. With the deletion of service at Lawrence net savings to Northeast of $26,677 are forecast.
 
 
 11
 The appeal of the City of Lawrence involves questions quite different from those to be considered in the Stratford-New Haven appeals. The Board's decision to terminate service to Lawrence is based primarily on the finding that since Lawrence area travellers use Logan Airport in Boston almost exclusively, service to Lawrence is not needed and, hence, not justified. This finding is amply supported by the evidence and it clearly supports the Board's conclusion which, contrary to the City's contention, was reached after considering competing interests and balancing public loss with public gain.
 
 
 12
 The most serious argument made by Lawrence is that this decision, without explanation, departs from other decisions of the Board — Eastern North Carolina Area Airline Service Airport Investigation, Order E-21051, July 10, 1964; Mohawk Airlines "Use It or Lose It" Investigation, Order E-21442, October 26, 1964; Service to the City of Tacoma, Washington, Order E-19915, August 16, 1963; Southern Airways "Use It or Lose It" Investigation, Order E-21753, April 28, 1964; Pacific-Southwest Local Service Case, Order E-17950, January 23, 1962 — and is, therefore, arbitrary. But this case is distinguishable from all of these, in that Lawrence is located in close proximity to a large metropolitan airport which Lawrence travellers do use in preference to their own. In contrast to some of the cases cited, experience at Lawrence has shown that air service is not needed and not economical. While we are sympathetic with the City's disappointment, we find no merit in its arguments urging reversal. The order of the Board with respect to deletion of Lawrence is accordingly affirmed.
 
 
 Southern Connecticut
 
 
 13
 The Board found that Eastern's deletion of New Haven would have great advantages to both Eastern and Allegheny, the only two carriers now serving the City. The former would experience substantial cost savings; and withdrawing its last twin-engine operation north of New York would facilitate "scheduling, maintenance and parts storage" and would permit "better use of flight personnel and equipment." The latter would be relieved of direct competition which would result in a net operating gain. The inconvenience to the New Haven passenger, the Board found to be minimal, as the Eastern service was used principally by New Haven-New York and some interline passengers, and "[T]he majority of New Haven area air travellers have not found ground transportation to and from New York airports either too inconvenient or too costly to meet their needs for long-haul air transportation." While deletion of Eastern's service will leave New Haven passengers without any air transportation to New York, the Board noted that Allegheny "possesses the necessary certificate authority to provide direct service from the Bridgeport-New Haven area to and from New York and would be free to institute such service, should future circumstances warrant it in doing so."
 
 
 14
 Consolidation of the separate services now rendered to Bridgeport and New Haven, the Board found to be justified on the ground that it would ultimately result in better service for the area as a whole, benefit the taxpayer and produce numerous and substantial advantages for Allegheny, while still adequately, and without significant inconvenience, meeting the needs of the New Haven-Bridgeport passenger. Allegheny would be able to improve its operating position by economies incident to consolidation. This would mean subsidy reductions. Similarly, there would probably be savings from airport construction. While both airports are necessary in the interest of general aviation, if service is consolidated at one, only one need be equipped with all-weather facilities. On the other hand the traveling public is faced, by consolidation, with the possibility of inconvenience, which in terms of time and distance, would be neither extensive nor substantial — an average of an additional 15 or 20 minutes' driving time or 20 road miles. In any event, the Board found that the most striking aspect of the Southern Connecticut portion of the proceedings is that its order will affect only a minor proportion of the total air traffic generated in the area as at least 90% of the area's total air passengers use the New York airports which are readily accessible from either New Haven or Bridgeport by trains, buses and excellent highways and which offer, probably, the most diversified and complete schedules in this country.
 
 
 15
 The Board recognized that consolidation, together with Eastern's deletion, will not immediately improve air service in the area; but it was convinced that "the only real hope for improved local air service in the long run lies in consolidation, and that the present situation whereby Allegheny must split service at two neighboring airports, 15 miles apart, is an anachronism which offers no future prospect of improved air service to the communities, but inhibits development of the area's potential for air service."
 
 
 16
 In choosing the Bridgeport Municipal Airport for this consolidated service, the Board found that, unlike Tweed New Haven Airport, it is now qualified for night operations, has a control tower and modern terminal building, and that it is significantly nearer the operational point at which it would become eligible for FAA programming and installation of instrument landing and approach lighting systems. But a real obstacle to the projected expansion of the Bridgeport airport is the fact that it is located within the Town of Stratford which has taken the position, both before the Board and in the courts of the State of Connecticut, that Bridgeport cannot condemn land within Stratford, or otherwise acquire it and use it in contravention of Stratford's zoning ordinances. But the Board then pointed out that an instrument landing system is "not a prerequisite for designation of a regional airport for Southern Connecticut * * *" and that in any event "* * * far more significant than the airport considerations are the facts concerning traffic location movement and generation * * *" all of which support the selection of Bridgeport.
 
 
 17
 The appeals of New Haven and Stratford present two different but related examples of the malaise of the administrative process which was the subject of Judge Friendly's Holmes Lectures three years ago[2] — i. e., the failure of the agencies to develop standards.[3] Judge Friendly stated the thesis to be that where Congress charges an agency with administering a statute in such broad terms as "public convenience and necessity" it is imperative for the agency to narrow, clarify and explain this general directive "to the point of affording a fair degree of predictability of decision in the great majority of cases, and of intelligibility in all." Friendly, op. cit. p. 14. Standards are necessary, as Judge Friendly suggests, for reasons of fairness, to encourage the security of transactions, and to maintain the independence of the agencies; and from the failure to develop and abide by standards flow errors as are evident in this proceeding.
 
 
 18
 This case began as a Regional Airport Investigation to extend into New England the "regional airport concept" applied in several other cases and initially announced in a joint policy statement of the Board and the Federal Aviation Agency (Press Release, May 2, 1961). While the Examiner found some decisional criteria in previous area airport decisions, the Board in the New Haven-Bridgeport consolidation portion of the proceeding, even when affirming the Examiner, did so with prolific indifference to the policy statement, its earlier decisions and, to some extent, the criteria relied on by the Examiner. In their briefs and arguments before us, counsel for the Board completely deny the relevance of any regional airport policy and insist that the only guiding principle is the "public convenience and necessity."
 
 
 19
 This confusion as to decisional guidelines results in at least equal confusion as to what the reasons for the Board's conclusions were. It states that consolidation will ultimately result in better service for the area as a whole, yet it concedes that "consolidation will not bring any immediate improvement" and it is apparent from the record that, in fact, service would deterioriate. It states that consolidation will bring savings from airport construction, although it acknowledges that both airports are still necessary in the interest of general aviation. It states that there will be no significant inconvenience to the public and that in any event only a small proportion of the public is affected as more than 90% of the area's total air passengers use the three New York airports. Yet, it recognizes that no public transportation of any kind is now available between Bridgeport Municipal Airport and New Haven, and that taxi fares are prohibitively expensive. Moreover, the record shows that 10% of the area's total air passengers in absolute figures was in 1962 nearly 20,000 persons or nearly 55 passengers per day. In selecting Bridgeport Municipal Airport to serve the area it states that that airport is closer to the operational point of receiving an instrument landing system, yet it brushes aside the objections of Stratford which might well prevent its installation by saying that an instrument landing system is not necessary after all and that other factors are more important.
 
 
 20
 Section 8(b) of the Administrative Procedure Act, 5 U.S.C. § 1007, requires the Board to set forth its findings and conclusions, as well as the reasons or bases therefor, and the failure to give intelligible reasons is clear reversible error. Secretary of Agriculture v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); Northeast Airlines v. C. A. B., 331 F.2d 579 (1st Cir. 1964). For this reason, alone, the case must go back to the Board for further consideration and an intelligible statement of the factors considered, issues decided and reasons supporting the Board's conclusions.
 
 
 21
 Apart from these internal inconsistencies, the Board's decision, without explanation, reverses an earlier case involving essentially the same questions, New England States Area Investigation, 30 C.A.B. 606 (1959); departs from the reasoning and holding in other regional airport cases, Greensboro-High Point/Winston-Salem Service Through a Single Airport Case, 34 C.A.B. 227 (1961), aff'd Airport Commission Forsyth County et al. v. C. A. B., 300 F.2d 185 (4th Cir. 1962); Service to Ogdensburg, N.Y. Case, Order E-18840, September 28, 1962; Eastern North Carolina Area Airline Service Airport Investigation, Order E-21051, July 10, 1964; and is inconsistent with other aspects of this same proceeding, Lewiston-Auburn, Maine; Rutland, Vermont. Such action is arbitrary and capricious, and must be reversed. Boston and Maine R.R. v. United States, 202 F.Supp. 830 (D.C. Mass.1962), aff'd per curiam 373 U.S. 372, 83 S.Ct. 1312, 10 L.Ed.2d 419.
 
 
 22
 The Board's decision to grant Eastern's application for deletion of New Haven was based in large part on a policy, evolved in a number of recent cases, of permitting trunkline carriers to withdraw from short-haul markets in favor of local service carriers. Roanoke Service by American, Order E-1824, March 19, 1962; Service at Peoria and Springfield, Order E-18446, June 13, 1962; Southwestern Area Local Service Case, Order E-19254, January 30, 1963; American Airlines Service to Akron, Order E-19259, January 31, 1963. Trunkline carriers, as a result of technological developments, have been converting their fleets to jet equipment which allows them to provide better service in long-haul high density markets but which also makes very expensive for them the servicing of short-haul traffic. At the same time local service carriers have been able to provide better service with greater economies when trunkline competition has been eliminated. See Service at Peoria and Springfield, supra. These same considerations caused the Board in this case to delete New Haven from Eastern's certificate. But in this case, unlike those cited above, Eastern does not provide an entirely duplicating service and the elimination of Eastern will, as noted earlier, leave New Haven, and for that matter, Bridgeport, passengers without any air service to New York. This departure from, or expansion of, the policy is entirely unexplained.
 
 
 23
 Also unexplained and unsupported by the record is the finding that the inconvenience to New Haven area travellers is minimal as only a minority is affected. As we pointed out above, percentage figures are exceedingly misleading.
 
 
 24
 The Board, moreover, has a statutory obligation to assure adequate service by fit and able carriers to meet the convenience and needs of the public. This obligation is not discharged by reliance on Allegheny's unused certificate authority or on the availability of surface transportation which requires one and three quarters to two hours' travel time and costs $10.00.
 
 
 25
 This portion of the case must accordingly be remanded to the Board for further consideration consistent with this opinion. We do not, by our action, intend any criticism of the policy upon which the Board's decision is based, only its application, without elaboration, in a different factual context from the ones in which it was formulated.
 
 
 26
 In No. 6360, a decree will be entered affirming that portion of the order of the Board concerning said petitioner.
 
 
 27
 In Nos. 6377 and 6382, decrees will be entered vacating those portions of the order of the Board concerning said petitioners and remanding those cases to the Board for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Bar Harbor, Houlton, Lewiston-Auburn, Rockland, and Waterville, Me.; Berlin, Concord, and Laconia, N. H.; Newport and Rutland, Vt.; Fitchburg, Lawrence, and Pittsfield, Mass.; and Bridgeport and/or New Haven, Conn
 
 
 [2]
 The lectures have now been published under the title The Federal Administrative Agencies: The Need for Better Definition of Standards (1962)
 
 
 [3]
 For a discussion and evaluation of available procedures for the formulation of policy and articulation of standards see Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv.L.Rev. 921 (1965)
 
 
 
 28
 ALDRICH, Chief Judge (dissenting).
 
 
 29
 The principles that an administrative agency must have standards, must not depart from them in an individual case, and should not make a general change lightly or without adequate explanation, seem to me as important as the basic proposition that its findings and reasoning must be set forth sufficiently to permit intelligent review. However, the agency decision in a case such as the one at bar, involving the allocation of economic resources, lends itself much less to the process of adjudication and review than, for example, whether an employer may be allowed to lock out his employees or how far products must be labelled. The complexities, the interrelationships, and the very number of factors not only engender differences of opinion, but lead readily to the conclusion that the agency's omission, or de-emphasis, of what seems to the reviewer important, means that it has not adequately considered the case, or explained its position. It is also, perhaps, difficult not to be result-oriented. I, frankly, came away from the argument with the feeling that New Haven had received a raw deal. I could not feel that way about Lawrence. Yet the principles involved were not different. How far must how many dissatisfied persons be obliged to travel to an airport in the interests of overall transportation efficiency? It must be that this is peculiarly a Board problem. It is, of course, highly undesirable that the Board should make inconsistent decisions. But for a court, whose jurisdiction over the Board is geographically limited, to insist on its own weighting of the elements of decision may easily contribute to such results rather than correct them. And, to repeat, the fact that persuasive advocates can pick out of a large number of facts some that seem individually important does not necessarily mean that the Board's indifference to them constituted error of law.
 
 
 30
 In short, after fully reviewing the record, I cannot bring myself to the conclusion that the Board here should be reversed. A few comments about the court's opinion may be in order. In the first place, I do not read the dissenting members as disagreeing with the view that Eastern should be permitted to discontinue its New Haven service. On this the Board was not 3-2, but unanimous. And, it seems to me, with good reason. The small amount of New Haven-New York traffic would not seem to compel what is essentially a trunk carrier to furnish this local service, its only local service north of New York. I regard the Board's opinion as entirely adequate to support its conclusion.
 
 
 31
 Turning to whether New Haven passengers have a valid objection to traveling to Bridgeport because of presently excessive taxi fares, which preoccupies much of New Haven's argument and appears to affect the court, it seems to me that this is a typical matter where the Board must be permitted to credit the "expectations" that it has. Certainly the Board can take cognizance of the experience in other airports — we might almost notice it ourselves — that when there is a sizable demand for limousine transportation it will be reasonably met. In a larger sense, I think the Board is entitled to have hopes that consolidating service in one regional airport will, in due course, prove to be generally beneficial.
 
 
 32
 Finally, I do not perceive the inconsistencies between the Board's treatment of New Haven and of Lewiston-Auburn and of Rutland, Vermont which trouble the court. Among other things, the distances of the latter cities from the nearest airport are far greater. Nor do I find impermissible inconsistency between the present decision and the other cases to which reference is made. True, there are some similarities in the facts, but there are also differences. The fact that two members of the three-man majority in this case regard the decision as inconsistent with the spirit of another decision does not mean that there were not a number of factual differences in the cases. I cannot believe as matter of law that they were not significant. In other words, I might myself feel that New Haven has ground to be substantially disappointed, but I do not believe that it has any legal complaint. I would affirm.