**TOWN OF MONTAGUE, Town of Northfield, Northfield School for Girls, the Northfield Inn and Western Mass. Bus Lines, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Peter Pan Bus Lines, Inc., Intervening Defendant.**

**Civ. A. No. 68–1196–W.**

United States District Court
D. Massachusetts.

Oct. 6, 1969.

John Paul Sullivan, Foley, Hoag & Eliot, Michael B. Keating, Boston, Mass., Gordon P. McDougall, Washington, D. C., for plaintiffs.

John H. D. Wigger, Richard W. Mc-Laren, Department of Justice, Washington, D. C., Jerome Nelson, Robert W. Ginnane, Interstate Commerce Commission, Washington, D. C., for defendants.

J. G. Dail, Jr., Washington, D. C., for intervener.

Before COFFIN, Circuit Judge, WY-ZANSKI, Chief Judge of District Court, and JULIAN, District Judge.

## OPINION

PER CURIAM.

Plaintiffs are two towns in western Massachusetts, a school for girls, an inn, and Western Massachusetts Bus Lines, Inc. They seek to set aside an order of the Interstate Commerce Commission, acting through its proper subordinate bodies, denying Western a certificate of public convenience and necessity for operating as an interstate carrier between East Northfield and Springfield, Massachusetts.* In addiion to defendants United States of America and the Interstate Commerce Commission, another bus line operating over part of the proposed route, Peter Pan Bus Lines, Inc., is an intervening defendant.

Western presently operates, under intrastate authority, between East Northfield at its northern point and Northampton at its southern. Passengers desiring to go further south to Springfield and on to New York must change to Peter Pan at Northampton, with a thirty minute delay, in order to go to Springfield where train and several bus services to New York are available. Western wishes to provide a through service from East Northfield to Springfield, thus avoiding the inconvenience to passengers of the Northampton change with its corollary loss of revenue to Western, and at the same time being able to interline with out-of-state carriers and advertise such service widely.

The question is whether the ICC misconceived its duty or abused its discretion in concluding that Western had not sustained its burden of proving public convenience and necessity for the proposed service. The evidence, in the form of verified statements, was of two kinds. The first was institutional representations that the service would be welcomed. A selectman of each of the plaintiff towns, spokesmen for plaintiff inn and a private resort community, the headmaster and alumnae secretary of plaintiff school filed such statements. Both the school and the inn presently arrange for taxis to bus connections in other towns for lack of direct service between plaintiff towns and Springfield. The

---

\* Defendant Peter Pan attacks the standing of the towns of Montague and Northfield, the School for Girls, and the Northfield Inn on the grounds that these plaintiffs were not parties in the ICC proceedings and therefore have no right to bring suit to review the Commission's action. Since, however, plaintiff Western Massachusetts Bus Line, Inc., is indubitably a proper party, and since the presence of these additional parties makes no difference to our disposition of the case, we decline to pass on this issue.

second category of statements—from the present or potential bus riding public—included statements from sixteen students at plaintiff school that they would use the service three or four times a year; an East Northfield businessman who said that he would use the proposed service on some of his trips to New Haven; and a Hartford, Connecticut, resident who in her summer visits to plaintiff inn would prefer a change of buses at Springfield to one at Northampton.

Western claims that the proposed service would fill a gap left when the Boston & Maine Railroad discontinued its north-south flag stop service in 1966. Peter Pan contends that the discontinuance in rail service was allowed because there were virtually no users, that plaintiff Western's current service is lightly patronized, and that plaintiffs have failed to demonstrate any new demand for their proposed service.

On this record the Commission found that "the relatively small additional convenience to passengers represented by [the proposed] extension to Springfield does not warrant the authorization of a new service duplicative (except for pickup and discharge at Northampton) of [Peter Pan's] Northampton-Springfield operations." Plaintiff advances the proposition that, having found *some* public convenience, the ICC was bound to consider whether approval of the application would be unduly prejudicial to Peter Pan. Counsel for plaintiffs asserted that even a scintilla of evidence of convenience would thrust the burden of finding prejudice on the ICC.

We find the argument appealing but beyond the reach of our circumscribed competence. Appealing, because in this case an applicant which apparently meets operational and financial standards proposes to offer increased service to the public over the public highways, and there is no substantial indication of harm to an existing operator. The raw query: if this does some good, and no harm, why not? is impressive.

But we come up short against the statutory words "convenience and necessity" and the discretion lodged in the ICC. The Interstate Commerce Act predicates the issuance of certificates on a finding by the ICC that the proposed service is "required by the * * * public convenience and necessity." 49 U.S.C. § 307(a). Were plaintiff's proposition to be accepted, the ICC would be obligated to grant certificates to responsible operators whenever any proposal for added service was made—even if those thereby convenienced might be one or two in number. Such minuscule accommodation would not rise to the magnitude of "public convenience and necessity". Plaintiff's authorities do not really support its proposition. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H.1964), merely held that the absence of a finding of inadequate service is not enough to bar a certificate "when other factors justify a finding of public convenience and necessity". 230 F.Supp at 653. No such other factors are presented by the record here. The more recent case of Arrow Transportation Co. v. United States, 300 F.Supp. 813 (D.R.I.1969), involved a sale of interstate operating rights by a bankrupt carrier. The statutory standard was that such sale must be "consistent with the public interest". 49 U.S.C. § 5(2) (b). There being no competitors to be injured and no other effective way to realize on the assets of the estate, the court reversed the ICC disapproval. This does not speak to our problem, which involves the original grant of operating authority under a different legal standard.

Given the existence of some discretion on the part of the ICC, we cannot say that its decision was unsupported by substantial evidence. So to say would in effect shift the burden of proof to the ICC on the merest showing of convenience and put courts into the business of detailed administration of the nation's highways. We must, therefore, approve the order of the ICC and dismiss plaintiffs' complaint.